# DEPARTMENT OF STATE, DIVISION OF LICENSING v DeSILLERS

## Case No. 88-0832

State of Florida, Division of Administrative Hearings

June 20, 1988

### APPEARANCES OF COUNSEL

**Benjamin E. Poitevent,** and **R. Timothy Jansen,** for petitioner.
**Leonard Robbins,** and **Harry G. Robbins,** for respondent.

### OPINION OF THE COURT

DONALD R. ALEXANDER, Hearing Officer.

### *RECOMMENDED ORDER*

Pursuant to notice, the above matter was heard before the Division

of Administrative Hearings by its duly designated Hearing Officer, Donald R. Alexander, on May 10, 1988, in Miami, Florida.

## BACKGROUND

By administrative complaint filed on January 29, 1988, petitioner, Department of State, Division of Licensing, alleged that beginning on January 29, 1987, respondent, Maria DeSillers, began soliciting funds on behalf of her minor son, Ronnie D. DeSillers, that such funds were deposited into an account on his behalf under the Florida Transfer to Minors Act, that respondent was initially exempt from registration with petitioner as a charitable organization, that respondent later forfeited her exempt status by expending funds for an improper purpose, and that by not registering with petitioner as a charitable organization within 30 days thereafter, respondent violated Subsection 496.04(1)(b), Florida Statutes (1987).

By petition dated February 8, 1988 respondent requested a formal hearing to contest the above allegations. The matter was referred by petitioner to the Division of Administrative Hearings on February 22, 1988 with a request that a Hearing Officer be assigned to conduct a hearing.

By notice of hearing dated March 14, 1988 a final hearing was scheduled on May 10, 1988 in Miami, Florida.

At hearing, the parties filed a stipulation of facts and submitted legal argument concerning their respective positions. On June 13, 1988, the parties were advised that the undersigned would take official notice of Chapter 88-68, Laws of Florida. That law amends certain portions of Chapter 496.

The transcript of hearing was filed on May 25, 1988. Proposed findings of fact and conclusion of law were filed by petitioner and respondent on May 25 and 26, 1988, respectively. A ruling on each proposed finding of fact has been made in the Appendix attached to this Recommended Order.

At issue is whether respondent should have an administrative fine of $1,000 imposed for failure to register as a charitable organization under Subsection 496.04(1)(b), Florida Statutes (1987).

Based upon the stipulation of counsel and the pleadings filed herein, the following findings of fact are determined:

## FINDINGS OF FACT

1. Respondent, Maria DeSillers, is the mother of Ronald David DeSillers, Jr. (Ronnie), a minor, now deceased. Because of an illness

suffered by her son, respondent solicited, either directly or indirectly, funds for the benefit of her son.

2. On January 29, 1987 respondent opened an account in the Coral Gables Federal Savings and Loan Association under the name "Maria DeSillers as Custodian for Ronald David DeSillers, Jr. under the Florida Uniform Transfers to Minors Act" (custodial account). A deposit of approximately $660,000 was made into the custodial account the same day. The establishment of the account was made under the authority of Chapter 710, Florida Statutes (1987), which governs the transfer of property by gift to minors.

3. Under the statutory scheme set forth in Chapter 496, Florida Statutes (1987), charitable organizations, subject to certain exceptions, must register with petitioner, Department of State, Division of Licensing (Division). Although respondent acknowledges that her actions of soliciting funds constituted a charitable organization as defined by Section 496.02(2)(a), Florida Statutes (1987), the parties have stipulated that respondent has never registered as a charitable organization with the Division.

4. On April 29, 1987 Ronnie died intestate (without a will). The balance in the custodial account on the day of his death was $509,912.50.

5. The parties have stipulated that, after Ronnie's death, the following transfers and expenditures were made by respondent from Ronnie's custodial account:

(a) On May 13, 1987 respondent transferred $227,971 from the custodial account into a Maria DeSillers account which stated it was in trust for her parents, Manuela and Jose Marchante.

(b) On June 20, 1987 respondent paid $400 from the custodial account to Plaza Venetia as a deposit on a rental unit.

(c) On June 27, 1987 respondent paid $1,350 from the custodial account to Plaza Venetia. The stipulation does not disclose the purpose of this payment.

(d) On July 9 and 10, 1987 respondent made cash withdrawals from the custodial account in the amount os $7,000 and $3,000, respectively.

(e) On July 10, 1987 respondent transferred $158,132 from the account in trust for her parents into a Barnett Bank Account entitled "Maria DeSillers."

(f) On January 19, 1988 respondent withdrew $25,000 from the custodial account to pay attorney fees.

6. On December 31, 1987 petitioner subpoenaed the bank records of the custodial account and commenced an investigation into the matter. The investigation culminated in the issuance of an administrative complaint against respondent on January 29, 1988 alleging she had violated Subsection 496.04(1)(b), Florida Statutes (1987), by failing to register with petitioner as a charitable organization after having lost her exemption from registration. That prompted this proceeding.

7. The parties have stipulated that the balance in the custodial account was $262,015.37 on November 18, 1987 and $239,287.93 on February 17, 1988.

8. On March 7, 1988 the circuit court in and for the Eleventh Judicial Circuit, Probate Division, appointed Karen Gievers, Esquire, as curator to protect the remaining assets of Ronnie's estate.

## CONCLUSIONS OF LAW

1. The Division of Administrative Hearings has jurisdiction of the subject matter and the parties thereto pursuant to Subsection 120.57(1), Florida Statutes (1987).

2. Through its administrative complaint, the Division seeks to impose a $1,000 administrative fine upon respondent for her failure to register as a charitable organization under Subsection 496.04(1)(b), Florida Statutes (1987). The complaint alleges that, although respondent was once exempt from registration, she made improper expenditures of solicited funds and thereby forfeited her exempt status. Because she has never registered as a charitable organization, it is alleged that DeSillers is in violation of state law.

3. Initially, it should be noted that this proceeding does not focus upon the legitimacy of the expenditures made by DeSillers but is concerned only with the narrow legal issue of whether, under the facts of this case, she was subject to registration requirements. Therefore, the issue of determining who spent what and why will be left to another forum.

4. Before addressing the legal contentions of the parties, a brief discussion of the relevant general law and a chronological history as to the status of the funds is appropriate. First, under the statutory scheme of Chapter 496, persons or organizations who solicit charitable contributions must register as a charitable organization with petitioner. However, Subsection 496.04(1)(a) exempts from registration five categories of organizations, institutions and person who do not employ professional solicitors. As is pertinent here, Subsection 496.04(1)(a)3. exempts from registration:

244

A person soliciting contributions for the relief of any individual specified by name at the time of the solicitation if all of the contributions collected, without any deductions, are turned over to the named beneficiary or promptly dedicated to the use of the named beneficiary.

Subsection 496.04(1)(b) goes on to provide in part that "any organization that is no longer exempt under this subsection because of . . . any other reason shall register with the department within 30 days and pay the fees as prescribed in § 496.046." The complaint is grounded on the premise that respondent once enjoyed the exemption in Subsection 496.04(1)(a)3., but that later on certain monies collected by respondent were not "dedicated to the use of the named beneficiary." The complaint raises the issue of whether DeSillers was obligated to register as a charitable organization.

Secondly, the funds were collected by respondent and transferred to a custodial account on behalf of Ronnie as a gift to a minor on January 29, 1987. They remained in the account until Ronnie's death three months later. At that time, and under the terms of Subsection 710.123(3), Florida Statutes (1987), the custodianship ended and the custodian (respondent) was obligated to "transfer in an appropriate manner the custodial property to the . . . minor's estate."[1] Further, by operation of law, the charitable funds then became a part of Ronnie's estate and subject to passage under the laws of intestate succession. See Section 732.101, F.S. (1987). Finally, under the facts of this case, the need to register could not have occurred until the thirty day period beginning on May 13, 1987, or the date when the first improper expenditure was allegedly made.

5. Petitioner takes the position that once DeSillers solicited funds and placed them in an account, the Division's regulatory jurisdiction over those funds continues until the funds are depleted or until disposition is ordered by a court of competent jurisdiction. To support this proposition, petitioner relies upon several general principles of statutory construction but, presumably because the issue is one of first impression, has cited no agency precedent or judicial decision directly on point. In response, and also without citing any specific authority for her position, respondent asserts that she need not register for two reasons. First, she argues that, after the funds were deposited into a custodial account under Chapter 710, the charitable organization

---

[1] While the law does not specify the manner in which the transfer should be made, DeSillers could have accomplished the transfer by simply changing the title of the custodial account to "the estate of Ronald David DeSillers, Jr." or words to that effect.

ceased to exist and the custodian assumed jurisdiction over the funds. Secondly, and in the alternative, she contends that after Ronnie's death, the remaining funds became property of his estate by operation of law and subject to the jurisdiction of the probate division of the circuit court. Accordingly, under the latter contention, she asserts that the Division's jurisdiction ceased as of April 29, 1987, or before any of the questioned expenditures were made.

6. The merits of respondent's first contention need not be reached since respondent's second ground is dispositive of the proceeding. Under her second contention, respondent points out that the funds are now a part of Ronnie's estate and that the Division's jurisdiction has been replaced by that of the circuit court. This argument is deemed to be meritorious since it is in accord with relevant principles of statutory construction and squares with both the duties and responsibilities of the Division under Chapter 496 and the purpose of the law. Titled the "Solicitation of Charitable Contributions Act," the law (§§ 496.01-496.136, F.S.) allows the Division to issue and revoke certificates of registration, adopt rules governing solicitation and otherwise enforce the provisions of the chapter. In plain terms, the Division's responsibility is to serve as a watchdog for the public and insure that monies are not only solicited in a lawful manner but are also expended for proper purposes. Without this scrutiny, the ability of well-meaning persons to solicit funds would be severely hampered, and the worthwhile causes for which such funds are raised would be jeopardized. However, once Ronnie died, under the Uniform Transfer to Minors Act the custodial account ended and the funds became a part of his estate. The circuit court then assumed the role of protector of the assets. This is because pursuant to Section 20, Article V of the Florida Constitution, circuit courts "shall have exclusive original jurisdiction . . . of proceedings relating to the settlement of the estate of decedents and minors . . . and other jurisdiction pertaining to courts of probate." As such, the circuit court as "exclusive jurisdiction" to ensure that the donated funds, which are now a part of Ronnie's estate, are used for legitimate purposes such as paying creditors and that all remaining funds are preserved for the beneficiaries of the estate. Thus, while the Division monitored the expenditure of donated funds during Ronnie's lifetime, the circuit court will continue this vigilance after his death. If the questioned expenditures are found to be unwarranted or improper, the curator and creditors have ample legal remedies to seek redress against respondent. Therefore, any administrative determination by the Division that an expenditure of estate funds was improper would run counter to the "exclusive jurisdiction" of the circuit court to make that

246

determination. This result is compatible with the statutory scheme in Chapter 496 and the constitutional mandate that the circuit courts supervise and protect a decedent's estate.

7. The Division has not pointed to any particular provision within Chapter 496 that purports to extend its jurisdiction over donated funds until they are depleted or disposed of by order of a court. It suggests, but does not specifically state, that the general law implies such a power. However, any reasonable doubt about the lawful existence of a particular power that is being exercised by an agency is to be rendered against its exercise. See, e.g., *Fraternal Order of Police, Miami Lodge 20 v City of Miami*, 492 So.2d 1122, 1124 (Fla. 3d DCA 1986). Further, statutes imposing a penalty, as Chapter 496 does, must always be strictly construed in favor of the one against whom the penalty is imposed and are never to be extended by construction. *Holmberg v Department of Natural Resources*, 503 So.2d 944 (Fla. 1st DCA 1987). While the Division urges that the law be liberally construed to achieve the desired salutary purpose, such a construction cannot prevail over a principle of law as firmly established as the one that holds a penal statute must be strictly construed. *Hotel and Restaurant Commission v Sunny Seas No. One, Inc.*, 104 So.2d 570, 571 (Fla. 1958). Therefore, the complaint must fail.[2]

## RECOMMENDATION

Based on the foregoing findings of fact and conclusions of law, it is

RECOMMENDED that the administrative complaint filed against Maria DeSillers be DISMISSED with prejudice.

DONE AND ORDERED this 20th day of June, 1988, in Tallahassee, Leon County, Florida.

---

## FINAL ORDER

This cause came before the Department of State, Division of Licensing (hereinafter "Petitioner") for consideration and final agency action. A formal administrative hearing was conducted pursuant to Section 120.57(1), Florida Statutes, on May 10, 1988 before Donald Alexander, a duly assigned Hearing Officer of the Division of Administrative Hearings. A Recommended Order was submitted by the Hearing Officer on June 20, 1988.

---

[2] Parenthetically, it is noted that had newly enacted Section 496.042 been in effect in 1986, DeSillers would have been required to register at the outset of her solicitation activities. Presumably, such registration would have obviated the necessity of this proceeding.

## Findings of Fact

The Department of State hereby adopts and incorporates herein by reference the Findings of Fact in the Recommended Order except as to #2 of the Recommended Order which relates to the validity of the Florida Transfer to Minor's Account.

## Conclusions of Law

In his Recommended Order, the Hearing Officer correctly concluded that upon the death of the beneficiary, the remaining assets under a Florida Transfer to Minor's account pass to the decedent's estate. The Hearing Officer applied such interpretation to the facts in this case, in order to reach his legal conclusion that the funds remaining after Ronnie DeSillers' death passed into Ronnie's estate. In fact, on page seven of the Recommended Order the Hearing Officer states "by operation of law, the charitable funds then become a part of Ronnie's estate and subject to passage under the laws of intestate succession."

The Petitioner specifically rejects the Hearing Officer's conclusion that the Respondent properly established a Florida Transfer to Minor's account. Petitioner has questioned the validity of this transaction from the outset of this proceeding. Petitioner argued in his Proposed Recommended Order that the facts do not prove that Respondent had properly established a Florida Transfer to Minor's account. Respondent's placing of charitable contributions into an account named a Florida Transfer to Minor's account does not change the fact that such funds are solicited charitable contributions and therefore subject to statutory authority of Petitioner pursuant to Chapter 496, Florida Statutes. Moreover, Respondent has stipulated that she was a charitable organization. (See insert p. 17, 18, Transcript). Therefore, Respondent is subject to the registration requirement of Chapter 496, Florida Statutes.

Petitioner respectfully rejects the Recommended Order which concluded that Petitioner lost statutory authority over the charitable funds after the death of Ronnie DeSillers.

Subsequent to the entry of the Hearing Officer's Recommended Order, the validity of the Florida Transfer to Minor's account was addressed by the 11th Circuit Court for Dade County, Probate Division. Judge Francis J. Christie ruled that the funds donated by the citizens and taxpayers of America were intended for Ronnie's operation and that money left over was to have been donated for the medical treatment of other children in like situations. More importantly, Judge Christie ruled, as Petitioner has been arguing from the outset, that Respondent did not establish a Florida Transfer to Minor's account.

248

In his Order dated July 28,1988 Judge Christie ruled that the donations created a *Constructive Trust,* and that all sums of money collected by Respondent before and subsequent to the minor's death became part of the trust. In fact, Judge Christie vehemently rejected Respondent's arguments that the funds became part of the minor's estate and thus passed through intestate succession to the Respondent.

The Hearing Officer's ruling that Petitioner lost jurisdiction over the charitable funds was based upon the assumption that Respondent had legally created a Florida Transfer to Minor's account. Although the conclusion was technically correct, the initial assumption was erroneous, because the Hearing Officer did not determine the validity of the Florida Transfer to Minor's account. That question was addressed by the 11th Circuit Court for Dade County. Judge Christie ruled that Respondent *did not* establish a Florida Transfer to Minor's account. Therefore, the Hearing Officer's conclusion of law based on his initial assumption of the validity of the Florida Transfer to Minor's account was erroneous. Petitioner maintains the funds are charitable contributions and as such, were subject to the statutory authority of Petitioner, pursuant to Chapter 496, Florida Statutes, until jurisdiction was assumed by circuit court. It was never a conclusion of law acceptable to the Department of State that funds solicited for charitable purposes were subject to the laws of intestate succession. With that premise, Judge Christie agrees.

Accordingly, Petitioner respectfully rejects the Recommended Order dated June 20, 1988. In doing so the Petitioner emphasizes that another forum, Probate Court, is currently reviewing the unsettled legal issues presented.

Even though Petitioner funds that Respondent acted contrary to Section 496.04(1)(b), Florida Statutes, and she was statutorily obligated to register when she lost her exemption, it is specifically determined that the administrative fine would further injure or interfere with the disposition of the assets and possibly cause undue hardship to creditors and the administrator of the estate.

Therefore, in the best interests of the public, Petitioner withdraws its administrative fine, but specifically finds that Respondent violated Section 496.04(1)(b), Florida Statutes, and that she had a specific statutory duty to register upon the loss of her exemption.

**Note:** The foregoing Final Order was signed by Alan Rollins, Assistant Director of the Department of State, Division of Licensing and a Certificate of Service dated September 19, 1988 was signed by R. Timothy Jansen, Assistant General Counsel.